September 1, 2023
Honorable Christine P. O'Hearn, U.S.D.J.
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets, Courtroom 5A
Camden, NJ 08101

Re: Brian McBride, et al. v. NJ Pen Civil Action No. 1:23-cv-02044-CPO-AMD

Dear Judge O'Hearn,


I received a letter from Counsel to the Defendants today.  The same is attached herein as Exhibit A and my response as Exhibit B.

The language of the five key elements included in the draft release is not the same as what you asked Plaintiffs and Defendants to swear under oath to understanding.  I am unsure why this is the case. Changing the wording changes the meaning and limitations of the Plaintiffs and Defendants.  The same is nothing more than the Defendant moving the goal posts and the exact reason why I asked for the addition of a mutual non-disparagement clause.

I find this behavior to be contemptuous  to the Court and akin to a seminarian rewriting a speech of the Roman Pontiff.

I will only agree to a release that uses Your Honor's exact wording, as reflected in the transcript, for the five key elements and as Your Honor stated them on the public record during the sworn colloquy conducted before the Court on August 22, 2023. If Opposing Counsel is adamant to deviate from those words, then I want changes to the language of the release as well.

I am asking the Court to intervene and inquire of Mr. Terlingo why he changed Your Honor's wording for the five critical elements.


Very truly yours,


Brian McBride

Plaintiff pro se

| Transcript language received from Mr. Terlingo | Language in draft release | Difference | Request to Defendant's Counsel |
|---|---|---|---|
| All articles that reference either of the individual plaintiffs or Plaintiff Blissick's business will be behind NJPen.com's "paywall", meaning subscribers to NJPen.com need to have a subscription in order to access them; the caveat being, and the understanding of all parties, that much like any other media website, the website currently does allow and will continue to allow two views per month by any individual or IP address that attempts to access. | All articles on the NJ Pen website, including the two that are the subject of the Claims, that refer to, relate to, or otherwise reference Plaintiffs or Plaintiff Blissick's business will remain behind NJ Pen's "paywall."  This includes, but is not limited to, the Parties' express understanding, also set forth on the record at the Conference, that NJ Pen's "paywall" operates according to standard industry practices in which individuals or IP Addresses may access a certain number of "free articles" per month, including potentially the articles that are the subject of the Claims, before the paywall blocks their access to any given article on the website; | *Addresses may access a certain number of "free articles" per month* omits the limit of two free articles per month as agreed in on the record oral testimony before Judge O'Hearn. | Use exact language from 8-22-2023 colloquy by Judge O'Hearn. |
| Defendant NJ Pen agrees not to use in any way the picture that was subject of the copyright claim in this case. | NJ Pen agrees to continue to refrain from any further use of the copyrighted picture of Plaintiff McBride identified in the Lawsuit; | Language changed to "any further use" implies that the photographs are being used until execution of the release | Use exact language from 8-22-2023 colloquy by Judge O'Hearn. |
| Defendant will agree not to at any time publish or utilize the arrest photograph, the "mugshot", of plaintiff Mr. McBride with respect to the incident | NJ Pen agrees not to include or post on its website or social media accounts any pictures of Plaintiff McBride's arrest, including the "mugshot;" | Removal "at any time publish or utilize." Allows Defendant to "utilize" photographs in a manner apart from its website or social media accounts.  This weakens | Use exact language from 8-22-2023 colloquy by Judge O'Hearn. |

| | | | |
|---|---|---|---|
| that is the subject of the article. | | what was agreed to on the record. | |
| Both the Plaintiffs and the Defendant are agreeing not to write in any formal or informal way, meaning no formal articles, social media, Facebook blogs, et cetera, related to this lawsuit, and if asked by any third party will say nothing other than "no comment." This is understood to apply equally to both sides, both individuals, the corporation or the business that Plaintiff Blissick runs, as well as the defendant. | The Parties agree that no Party to this Agreement will write or publish any writing on any website or social media accounts, including those of Defendant or Plaintiffs, that refers to, relates to, or otherwise references the Lawsuit. The Parties further agree that, if asked by a third-party about the Lawsuit, each Party and their counsel, as well as their respective heirs, successors, assigns, professionals, directors, officers, employees, representatives, servants, subrogees, parents and subsidiaries, affiliated and successor entities, shall reply only "No Comment;" | Removal of Judge O'Hearn's language that was agreed to on the record by all parties "not to write in any formal or informal way, meaning no formal articles, social media, Facebook blogs, et cetera, related to this lawsuit." Omission of this language makes the clause more vague. | Use exact language from 8-22-2023 colloquy by Judge O'Hearn. |
| The defendant NJPen will cease referring to Mr. McBride as a co-owner of Ms. Blissick's business. | NJ Pen agrees to refrain from making any further statements that Plaintiff McBride has an ownership interest in Plaintiff Blissick's business. | The word cease was changed to refrain. Any further statements was added. "Any further" was not something Plaintiffs agreed to under oath. | Use exact language from 8-22-2023 colloquy by Judge O'Hearn. |
| | | | |
| | | | |
| | | | |

Exhibit A



**Christopher Terlingo**
*Member of New Jersey Bar*
cterlingo@archerlaw.com
856-673-7150 Direct
856-795-0574 Direct Fax

Archer & Greiner, P.C.
1025 Laurel Oak Road
Voorhees, NJ 08043
856-795-2121 Main
856-795-0574 Fax
www.archerlaw.com

**VIA ELECTRONIC MAIL**
September 1, 2023

Brian F. McBride
Deborah Blissick
15 Seagarden Drive
Linwood, New Jersey 08221
bf.mcbride@comcast.net
bliss4deb@gmail.com

   **Re:**  ***Brian McBride, et al. v. NJ Pen***
      **Civil Action No. 1:23-cv-02044-CPO-AMD**

Dear Dr. McBride & Ms. Blissick:

   This office represents Defendant, NJ Pen Media Group, LLC ("NJ Pen") in the above-referenced matter. We are in receipt of your e-mails of August 31, 2023, as well as the letter of the same date you posted to the court docket, regarding the draft confidential settlement agreement which we shared with you on August 31, 2023.

   As you know, Judge O'Hearn at the August 22, 2023, settlement conference instructed the parties to meet and confer with one another about any issues regarding the draft agreement memorializing the settlement placed on the record at the conference prior to seeking judicial intervention. Instead, you wrote to the Court less than an hour after sending me an initial e-mail reply regarding the draft. Despite this, and consistent with the instructions received from the Court, I am writing to you now regarding the concerns you have raised.

   As an initial matter, your August 31, 2023 letter violates the settlement agreement reached on the record because it discusses on a public court docket the terms of a confidential settlement. Therefore, you must immediately take action to retract that letter from the docket.

   Next, your communications make new demands not included among the "five terms" agreed to on the record at the settlement conference, including: addition of a non-disparagement clause with a liquidated damages provision; updates to one of the articles; and the requirement that NJ Pen provide you copies of certain photographs and destroy any in its possession. In fact, the non-disparagement provision you continue to demand was requested and specifically denied at the settlement conference.

September 1, 2023
Page 2

Judge O'Hearn stated very clearly, on the record, <u>the terms specific to the settlement</u> of this lawsuit:

> So the five conditions that we are talking about that will be part of a mutual release of all claims between both parties for everything that's happened up until the date that the releases are signed are as follows:
>
> 1: All articles that reference either of the individual plaintiffs or Plaintiff Blissick's business will be behind newjerseypen.com's "paywall", meaning subscribers to newjerseypen.com need to have a subscription in order to access them; the caveat being, and the understanding of all parties, that much like any other media website, the website currently does allow and will continue to allow two views per month by any individual or IP address that attempts to access.
>
> Condition Number 2: The defendant will agree not to use in any way the picture that was subject of the copyright claim in this case.
>
> Number 3: The defendant will agree not to at any time publish or utilize the arrest photograph, the "mugshot", of plaintiff Mr. McBride with respect to the incident that is the subject of the article.
>
> Number 4: Both parties are agreeing not to write in any formal or informal way, meaning no formal articles, social media, Facebook blogs, et cetera, related to this lawsuit, and if asked by any third party will say nothing other than no comment. So that applies equally to both sides, both individuals, the corporation or the business that Ms. Blissick runs, as well as the defendant.
>
> And Number 5: The defendant will cease referring to Mr. McBride as a co-owner of Ms. Blissick's business.

Transcript of August 22, 2023, Settlement Conference, at T3:4 – T4:6.

Clearly, the demands you are now making are not among the above terms. Moreover, after reciting these terms, Judge O'Hearn asked all parties if any terms were left out, to which Plaintiffs both stated that <u>nothing had been left out</u>. You also both stated, on the record, that <u>you understood these terms</u>, that <u>you had a sufficient amount of time to consider them</u>, that <u>you were not coerced into entering it</u>, that <u>you consulted with an attorney</u>, and, finally, that <u>you understood "you cannot come back after today and claim that you didn't understand the terms or that you want to change your mind.</u>" T9:8-13 (emphasis added).

The draft Confidential Settlement Agreement and Mutual Unconditional General Release that we circulated memorialize the terms already agreed to on the record. If the parties cannot agree to a form of memorialization that honors the terms already agreed to before Judge O'Hearn, then NJ Pen will be required to seek the Court's intervention to enforce those terms.

September 1, 2023
Page 3

We look forward to hearing from you.

Very Truly Yours,

ARCHER & GREINER
A Professional Corporation

By: *Christopher M. Terlingo*
Christopher Terlingo

cc: John C. Connell, Esq. (via e-mail)

Exhibit B

September 1, 2023

Christopher M. Terlingo, Esq.
Archer & Greiner P.C.
1025 Laurel Oak Road
Voorhees, NJ 08043

RE: Settlement discussions In re: 1:23-cv-02044 CPO-AMD

Dear Attorney Terlingo,

Thank you for your letter dated today.

In your letter, you accuse me of breaching the confidentiality of the settlement agreement.  The transcript of the hearing being publicly available on the electronic docket soundly belies any claims that you made that I, Plaintiff Brian McBride, breached the settlement agreement. If you wish for the transcript and my letter to Judge O'Hearn to be sealed, you will need to make application to the Court pursuant to local Local Rule 5.3. Strangely, you made no application in Court on August 22, 2023 or at any time thereafter pursuant to Local Rule 5.3. You even wrote it in the first draft of the proposed release:

- WHEREAS, the Parties at the Conference ***agreed on the record to the terms of a settlement*** of the Claims, Lawsuit, as well as a release of all potentially available additional claims (the "Unconditional Settlement and General Release")" (emphasis added)

If you believe that a non-disparagement as a clause to the agreement was "denied," please send me a copy of the full transcript and cite exactly where that denial is memorialized *on the record by Judge O'Hearn*. I am having trouble reading that Judge O'Hearn denied such a clause when referring to a mutual release.

The fundamental problem with your first draft of the release is that you changed the language of the release terms used by Judge O'Hearn on the record and to which I testified understanding and agreement.  Judge O'Hearn, on the record, went out of her way to admonish you to *keep the language simple.* The problem is that you did not write the terms of the release exactly as Judge O' Hearn repeated them.  You didn't even get her initials right in the docket number. I realize you are a new and young attorney.  But, for God sake man, I'm not paid to be your supervising attorney or secretary.

In the version of the settlement agreement attached herein I replaced *your* language with what you claim is Judge O'Hearn's language from the official transcript.  I will agree to a release that uses exactly these terms.  Moreover, we did not agree to release all of those other people.  We

only agreed to release the Defendant.  By the same token, he only agreed to release Plaintiffs. That is what we agreed to on the record.  No more. No less.

I believe New Jersey Attorney Rules of Professional Conduct RPC 4.1 require you to be truthful in your statements to third persons.  The draft release agreement falls short of that standard.

Guide yourself accordingly.


Very truly yours,


Brian McBride

15 Seagarden Drive

Linwood, NJ 08221